﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 190821-41232
DATE: June 16, 2020

ORDER

Entitlement to service connection for hypertension is granted.

Entitlement to service connection for basal cell carcinoma is granted.

FINDINGS OF FACT

1. He has been diagnosed with current disability of hypertension.

2. A nexus, or link, has been established between his hypertension and an in-service event or injury. 

3. Resolving reasonable doubt in the Veteran’s favor, his hypertension began during active service.

4. He has been diagnosed with current disability of basal cell carcinoma.

5. A nexus, or link, has been established between his basal cell carcinoma and an in-service event or injury. 

6. Resolving reasonable doubt in the Veteran’s favor, his basal cell carcinoma began during active service.

CONCLUSIONS OF LAW

1. The criteria for service connection for hypertension are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for service connection for basal cell carcinoma are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 1975 and December 1996.

On February 19, 2019, the new modernized decision review system created by the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA), went into effect. Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017). This law creates a new framework for appellants dissatisfied with VA’s decision on their claim to seek review.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a December 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). 38 C.F.R. § 19.2(d). The December 2019 rating decision made the favorable finding that he has been diagnosed with current disabilities of hypertension and basal cell carcinoma and that a nexus, or link, has been established between his claimed issue and an in-service event or injury. The Board is bound by these favorable finding. 38 C.F.R. § 3.104(c).

Notably, the claims for service connection for hypertension and basal cell carcinoma were previously denied in an August 2007 rating decision under the legacy system. The December 2019 rating decision determined new and relevant evidence has been received for both claims and the claims were reopened. The Board is bound by this favorable finding. Id.

In January 2020, the Board received the Veteran’s VA Form 10282 (Decision Review Request: Board Appeal (Notice of Disagreement)) selecting direct review of the AOJ decision by the Board.

1. Entitlement to service connection for hypertension

The Veteran contends that his hypertension is etiologically related to service. 

As previously mentioned, the December 2019 rating decision made the favorable findings that the Veteran has been diagnosed with current disability of hypertension and that a nexus, or link, has been established between his claimed issue and an in-service event or injury. The Board is bound by these favorable findings. 38 C.F.R. § 3.104(c).

The only question that remains is whether there is evidence of an in-service incurrence.

The Board concludes that the Veteran has a current disability that is related to military service. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

There is sufficient medical evidence to establish that the first signs and symptoms of hypertension incurred in service.

The evidence shows that the Veteran was seen for complaints of high blood pressure in-service. April 1995 service treatment records (STRs) reflect he was monitored for high blood pressure, with a 5-day blood pressure check showing readings as follows: 146/95, 137/90, 139/92, 133/78, and 137/86. He was diagnosed with hyperlipidemia. June 1995 STRs reflect he returned for a follow up for high blood pressure but was once again only diagnosed with hyperlipidemia. September 1995 STRs reflect the Veteran sought treatment for elevated blood pressure due to stress of driving to work. He was given relaxation and deep breathing techniques. 

The first formal diagnosis of hypertension occurred two years post-service. VA medical records show the Veteran was given a preliminary diagnosis of hypertension at an April 1998 medical visit. On examination, he had a blood pressure reading of 153/112. He reported that he was prescribed medication for hypertension three to four years prior, while in service. See July 1998 Medical Treatment Record-Government Facility

May 1998 VA medical records show he followed up for his elevated blood pressure. On examination, he had a blood pressure reading on examination of 171/113. He was prescribed Monopril, a common high blood pressure medication. Id.

June 1998 VA medical records show the Veteran followed up again for hypertension. His physician noted that he was doing well, and his blood pressure check showed good control. On examination, he had a blood pressure reading of 130/87. Id.

As for the medical opinion evidence of record, an April 2019 private examination report shows Dr. A.N. opined that the Veteran was diagnosed with this condition during active duty military service. She noted he was currently taking two oral medications. His blood pressure was measured as 130/100 (medicated) on examination. He had an active diagnosis of hypertension. She opined that his hypertension has persisted since active duty military service and should be service connected. 

Similarly, the Veteran was afforded a VA examination in November 2019 where the examiner rendered a favorable opinion. The VA examiner noted the Veteran’s hypertension diagnosis dated back to 1998. On examination, three blood pressure readings supported a diagnosis of hypertension, which were as follows: 162/92, 141/97, and 153/103. The VA examiner considered the Veteran’s lay statements that he began taking blood pressure medication in the Air Force around 1990 and had continued to take prescribed medication for his hypertension since that time. His current prescribed medications for his hypertension include amlodipine, hydrochlorothiazide, and metoprolol tartrate. The examiner opined it was at least as likely as not that the Veteran’s hypertension is the result of military service. 

Of note, the examiner acknowledged the April 2019 private opinion, but explained that the physician misinterpreted some of the evidence. The five day BP check ending 25 April 1995, although demonstrating some elevated readings, did not meet the diagnostic criteria for the diagnosis of hypertension at that time- a diagnosis of hyperlipidemia was seen instead which could have been confused with the word hypertension especially in the context that it was a BP follow up. However, the Veteran was diagnosed with hypertension within 2 years after retirement from active duty and a note dated June 18, 1998, which confirms that he was being treated for hypertension. Especially in view of the fact that the Veteran’s blood pressure was being monitored near the end of his service and likely represented the beginning of his hypertension within two years of discharge, it is most likely that his hypertension resulted from the 21 years of service prior to that time. The examiner also explained that the Veteran’s current hypertension found on exam is consistent with the natural progression of his hypertension diagnosed within two years after his military retirement and as a progression of his documented elevated blood pressures noted near the end of his active duty military service.

The Board notes that there is no negative medical opinion evidence against the claim.

On balance, the evidence requires a favorable determination. The Board finds the preponderance of the evidence shows the Veteran’s current hypertension arose in and is related to service. Accordingly, after resolving all doubt in favor of the Veteran, the Board finds that service connection for hypertension is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

2. Entitlement to service connection for basal cell carcinoma

The Veteran contends that his basal cell carcinoma was caused by his military service, to include performance of his duties as a crew chief on the flight line in Dessert Storm. He asserts he was exposed to sun rays every day he had to work. He served [in Desert Storm] for six months in 1993. After 21 years in the Air Force, he had the same job and was exposed to the sun every day, including in tropical environments from Philippines to Saudi Arabia. He stated that the flight line was a no hat area due to the potential of your hat being ingested into jet engines. He further contends that the onset of skin cancer can take years to develop. He feels that the lack of medical information about skin cancer at that time, and not being able to wear a hat for protection while working outdoors is a direct contributor to his skin cancer as there is no history of skin cancer in his family. See April 2007 and May 2007 VA 21-4138 Statement in Support of Claim. 

As previously mentioned, the December 2019 rating decision made the favorable finding that he has been diagnosed with current disability of basal cell carcinoma and that a nexus, or link, has been established between his claimed issue and an in-service event or injury. The Board is bound by these favorable findings. 38 C.F.R. § 3.104(c).

The only question that remains is whether there is evidence of in-service condition in service. 

Upon affording the Veteran the benefit of the doubt, the Board concludes that the Veteran has a current disability that is related to military service. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

Notably, there is evidence in support and against the claim. 

Service treatment records are generally silent for any complaints, diagnosis or treatment of basal cell carcinoma.

However, there is a notation of a scar of the lower left lip in service in April 1995. Also, his DD 214 shows he served in the U.S. Air Force with a military occupational specialty of an aircraft maintenance craftsman and a bioenvironmental engineering craftsman.

Post-service, the first indication of a formal skin condition occurred when the Veteran was diagnosed with a right temple skin lesion in April 2003 VA records. 

An April 2003 letter reflects the Veteran was treated for a lesion on the right temple and right lateral cheek with liquid nitrogen. It was also noted that he had a seborrheic keratosis of the right lower eyelid, which was friable on examination and bled with touch.

June 2003 VA records showed complaints of left temple pain, bleeding and itch/irritation. 

As for the medical opinion evidence of record, an April 2019 private medical examination report opinion contains a medical opinion from Dr. A.N. who noted the Veteran has been diagnosed with multiple basal cell carcinomas since his military service. Approximately 8-10 lesion have been excised. Several lesions have occurred on the Veteran’s forehead/scalp. She noted he worked on the flight line for several years where use of hats is not allowed. Dr. A.N. opined it is as likely as not a permanent condition, which is directly and causally related to the Veteran’s military service. 

Contrarily, a November 2019 VA examiner opined it is less likely as not that the Veteran’s basal cells are caused or aggravated to any degree by his military service. The examiner noted that he reviewed the April 18, 2019 private medical opinion. However, the service medical records are silent for any basal cell carcinoma. The several recurrent basal cell carcinomas are noted in the [post-service] medical records. Although sun exposure would have occurred during the veteran’s military duties, it is required by Air Force safety regulations to take appropriate exposure precautions - such as sunscreen, and failure to do so (resulting in injury or sunburn) is frequently subject to disciplinary action, which is a deterrent to accurate reporting. The SMR is silent for any documented sun over-exposure events, or any suspicious skin lesions such as actinic keratoses, representing potential skin damage which is potentially a precursor to skin cancer. Therefore, there is no current objective evidence available that the Veteran’s current basal cell carcinomas were caused or aggravated ot any degree by his military service. However, the Veteran was advised by the examiner that if others who knew him during his period of service could recall him having any skin cancers during service, their statements could be used to support a direct service connection.

On balance, the Board finds the evidence to at least be in equipoise as to whether the Veteran’s current skin cancer is related to service. 

In this regard, the Board finds that the November 2019 VA examiner opinion is inadequate. First, it is unclear if the VA examiner elicited a complete medical history from the Veteran as it appears the VA examiner did not locate the specific initial diagnosis; rather, he said its onset was in the early 2000s. Moreover, the Veteran reported at the VA examination that he had symptoms of a skin condition in-service and that was removed, but the examiner did not acknowledge the STRs that shows he had a lip scar or address or explain that the Veteran’s lay statements of in-service skin lesions. The Board also notes that a Veteran is competent to report observable skin conditions, such as lesions. The VA examiner’s failure to address the Veteran’s lay assertions of in-service lesions or discuss the initial onset of 2003 and 2006 initial medical records casts doubt on the probative value of the opinion.

Based on the foregoing, the Board must resolve reasonable doubt in the Veteran’s favor. The Board finds that service connection for basal cell carcinoma is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

 

Journet Shaw

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Pendleton, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.